NOT FOR PUBLICATION                              [Dkt. Ent. 56]


# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE


---

ACCESS 4 ALL, INC.
and RONALD MOORE,

        Plaintiffs,           Civil Action Nos.
                            08-3817 (RMB/JS)

      v.

BOARDWALK REGENCY CORP.
d/b/a CAESAR'S ATLANTIC CITY
HOTEL AND CASINO,

        Defendant.

---

ACCESS 4 ALL, INC.
and RONALD MOORE,

        Plaintiffs,           Civil Action Nos.
                            08-4679 (RMB/JS)

      v.

BALLY'S PARK PLACE, INC.

        Defendant.             **<u>OPINION</u>**

---

<u>Appearances</u>:

Alan R. Ackerman, Esq.
1719 Route 10 East
Parsippany, NJ 07054

      Attorney for Plaintiffs,

Russell L. Lichtenstein, Esq.
Nancy Ann Valentino, Esq.
Cooper, Levenson, April, Niedelman & Wagenheim, PA
1125 Atlantic Avenue, 3rd Floor

Atlantic City, NJ 08401

    Attorneys for Defendants.

**BUMB, UNITED STATES DISTRICT JUDGE:**

    This matter comes before the Court on two motions for summary judgment filed by defendants Caesar's Atlantic City Hotel and Casino ("Caesar's") and Bally's Park Place ("Bally's"), respectively (collectively the "Defendants").[1]  Defendants assert that plaintiffs Ronald Moore and Access 4 All, Inc. ("Plaintiffs") lack standing to pursue their claims for injunctive relief, attorney's fees and costs under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.[2]  For the following reasons, Defendants' motions for summary judgment are denied without prejudice.  Defendants may renew their motions at the conclusion of the evidentiary hearing.

---

[1] Plaintiffs filed two separate but very similar supplemental complaints on May 18, 2009, against Caesar's and Bally's, respectively. [Compare Suppl. Compls., No. 08-cv-3817, Dkt. Ent. 29 with No. 08-cv-4679, Dkt. Ent. 26 (alleging different ADA violations).]  Since these cases involve common questions of law and fact, the Court consolidated them to promote judicial economy and efficiency pursuant to Federal Rule of Civil Procedure 42(a). [Dkt. Ent. 67.]  Accordingly, the Court now considers both motions for summary judgment.

[2] Title III of the ADA prohibits disability discrimination in places of public accommodation.  42 U.S.C. § 12182(a).  Title III also provides a private right of action to persons who are subjected to such discrimination, although they may only obtain injunctive relief, attorney's fees and costs.  42 U.S.C. § 12188(a)(2).

## I. BACKGROUND[3]

Peter Spalluto and Access 4 All instituted the present actions on July 31, 2008, and September 18, 2008.  Both complaints alleged ADA violations encountered by Spalluto at Defendants' hotels and casinos in Atlantic City, New Jersey (the "Properties").  Access 4 All is a non-profit Florida corporation comprised of individuals with disabilities as defined by the ADA. (Pl.'s Ex. 4, Di Palma Aff., ¶ 1.)  The expressed purpose of this organization is "to represent the interests of its members by assuring that places of public accommodations are accessible to and useable by the disabled and that its members are not discriminated against because of their disabilities."  (Id.) Access 4 All furthers these interests, in part, by filing complaints against establishments that are not in compliance with the mandates of the ADA.[4]  (Id. at ¶¶ 1-4.)  After the original complaints were filed, Spalluto passed away.

Access 4 All President Peter Di Palma subsequently reached out to Ronald Moore, a New Jersey resident with quadriplegia, who uses a wheelchair for mobility, to pursue Spalluto's existing

---

[3] All background facts are drawn from the Supplemental Complaints [Dkt. Ents. 29/26] and the parties' Rule 56.1 Statements of Material Fact and are construed in the light most favorable to Plaintiff.  See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004).

[4] Enforcement of Title III has been in large part by private individuals and organizations.  See Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007) (noting that "most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled")

claims.[5]  (Def.'s Ex. A, Moore Dep. I 21:23-22:1, 31:21-23; Pl.'s
Ex. 1, Moore Aff. ¶¶ 1-2.)  In that regard, on March 20, 2009,[6]
Moore traveled from his home in New Providence, New Jersey to
Atlantic City, New Jersey, specifically for the purpose of
confirming Spalluto's allegations of ADA violations at both
casinos, and, he alleges, "to utilize the amenities of the
facility."  (Suppl. Compl. ¶ 6 (May 18, 2009); Def.'s Ex. A,
Moore Dep. I 31:21-23.)  Moore stayed overnight first at Bally's,
and then at Caesar's.  Id.  Once he arrived at the Properties he
met with Access 4 All's expert, Gene Mattera, to search for ADA
violations.  (Def.'s Ex. A, Moore Dep. I 31:7-23.)

Moore alleges that while visiting both casinos, he
encountered numerous architectural barriers in violation of the
ADA.  (Suppl. Compl. ¶ 6, 12.)  As a result of these barriers, he
alleges, he was denied access to and full enjoyment of the
Properties.  (Id. at ¶ 13.)  Accordingly, he substituted himself
as a plaintiff in this action by filing a Supplemental Complaint

---

[5] Since his involvement with Access 4 All, Moore has been named as a plaintiff
in approximately 20 ADA lawsuits.  (Def.'s Ex. A, Moore Dep. 23:16-17, Dec.
18, 2009, 10:30am ("Moore Dep. I").)

[6] In Moore's deposition, Defendants' counsel referred to Plaintiff Moore's
"first visit to Bally's" as occurring "in approximately April of [2009]."
(Def.'s Ex. A, Moore Dep. I 31:1-2).  The Supplemental Complaint and Moore's
Affidavit, however, state that Moore first visited Bally's on March 20, 2009.
Suppl. Compl. ¶ 6; Moore Aff. ¶ 4.  The Court thus presumes this was a
clerical error on the part of Defendants' counsel.

on May 18, 2009.  [No. 08-cv-3817, Dkt. Ent. 29; No. 08-cv-4679, Dkt. Ent. 26.][7]  Moore contends that these ADA violations constitute discrimination against him.  (Suppl. Compl. ¶ 13.) Nevertheless, he also alleges that he "plans to return . . . to avail himself of the goods and services" offered at the Properties.  (Id. at ¶ 6.)  Moore and Access 4 All seek injunctive relief, attorney's fees, litigation expenses, and costs pursuant to the ADA.  (Id. at ¶ 18.)

On May 28, 2010, Defendants filed the within motions for summary judgment on the grounds that Plaintiffs lack standing. [Dkt. Ents. 56/49.]  Specifically, they contend that Plaintiff Moore has no "definite plans" to return to the Properties in the future, and consequently, he has not suffered the "injury in fact" necessary to sue for injunctive relief.  They also assert, in essence, that because Moore was "hired" for the sole purpose of excavating ADA violations, he has not satisfied the "injury in fact" requirement.  Plaintiffs oppose the motions, relying in large part upon an affidavit by Moore stating that ever since his stay at Bally's and Caesar's in March 20 and 21, 2009, "it has

_____

[7] For the sake of brevity, the Court will hereinafter exclude the docket numbers and merely cite to the relevant docket entries or page numbers of the earlier filed case (08-3817), followed by "/" and the docket entry or page number of the later-filed case (08-4679).  For example, here, the Court would merely cite "Dkt. Ents. 29/26".

been [his] definite intention to return for an overnight stay" at both hotels "the day they are made fully accessible for a person in a wheelchair, by removing the architectural barriers and by installing ADA-compliant restrooms with roll-in showers." (Pl.'s Ex. 1, Moore Aff. ¶ 6, June 15, 2010) Defendants counter with the argument that this affidavit is a "sham" that the Court should disregard.

## II. STANDARD OF REVIEW

Summary judgment should be granted if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "a mere scintilla of

6

evidence," without more, will not give rise to a genuine issue
for trial.  <u>Anderson</u>, 477 U.S. at 249.  In the face of such
evidence, summary judgment is still appropriate "where the record
. . . could not lead a rational trier of fact to find for the
nonmoving party . . . ."  <u>Matsushita Elec. Industrial Co. v.
Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986).  "Summary
judgment motions thus require judges to 'assess how one-sided
evidence is, or what a 'fair-minded' jury could 'reasonably'
decide.'"  <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d
458, 460 (3d Cir. 1989) (quoting <u>Anderson</u>, 477 U.S. at 265).

The movant "always bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of 'the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any,' which it believes demonstrate the
absence of a genuine issue of material fact."  <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.
56(c)).  Then, "when a properly supported motion for summary
judgment [has been] made, the adverse party 'must set forth
specific facts showing that there is a genuine issue for trial.'"
<u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The
non-movant's burden is rigorous: it "must point to concrete
evidence in the record;" mere allegations, conclusions,

7

conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

### III. DISCUSSION

Defendants contend that summary judgment is warranted, because Plaintiffs lack standing to sue for injunctive relief under Title III of the ADA.[8]  Specifically, they argue that Plaintiff Moore has no "definite plans" to return to Atlantic City, and thus he has not suffered the requisite "injury in fact," or threat of future harm, necessary to pursue an injunction.

"Standing is a threshold jurisdictional requirement, derived from the 'case and controversy' language of Article III of the Constitution." Pub. Interest Research Group, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997); see Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 102 (1998).  The doctrine embraces both constitutional and judicially self-imposed prudential limitations on who may invoke the power of the federal courts.  See Allen v. Wright, 468 U.S. 737, 751 (1984).

---

[8] Although Defendants initially contend that both Moore and Access 4 All lack standing, Defendants only assert arguments concerning Moore.  If the Court determines that Moore does in fact lack standing to bring this claim, then Access 4 All's associational standing would be called into doubt.  See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977) (the primary factor in determining associational standing is whether an association's members would otherwise have standing to sue in their own right).

The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the matter and degree of evidence required at successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (internal citations omitted); see Focus v. Allegheny County Ct. of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996). At the summary judgment stage, Plaintiffs cannot rest on mere allegations to establish standing, "but must 'set forth' by affidavit or other evidence, 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." Lujan, 504 U.S. at 561 (citing Fed. R. Civ. P. 56(e)). Thus, to defeat summary judgment, the plaintiff must raise a genuine issue of material fact as to whether the requisite standing elements are satisfied. Celotex, 477 U.S. at 322.

To show Article III standing, a plaintiff has the burden of proving the following three elements:

> (1) [I]t has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000); Soc'y Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175-76 (3d Cir. 2000).

9

Additionally, because injunctions regulate future conduct, a party seeking prospective injunctive relief must demonstrate a "real and immediate"–as opposed to a merely speculative or hypothetical-threat of future harm.  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111 (1983) (plaintiff lacked standing to enjoin police use of chokeholds absent sufficient likelihood that he would be wrongfully choked by police in the future); <u>Doe v. Nat'l Bd. of Med. Exam'rs</u> ("<u>Doe II</u>"), 210 Fed. Appx. 157, 159-60 (3d Cir. 2006) (plaintiff lacked standing to seek injunction barring disclosure of disabled status on medical examination scores, absent realistic, non-hypothetical fear that state licensing board would discriminate against him in the future due to disclosure).  "Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'" <u>Doe II</u>, 210 Fed. Appx. at 160 (citing <u>Lyons</u>, 461 U.S. at 102); <u>see</u> <u>Lujan</u>, 504 U.S. at 564.  "Likewise, intentions to return to the source of the illegal conduct 'some day' - without any description of concrete plans, or indeed even any specification of <u>when</u> the some day will be - do not support a finding of the requisite actual or imminent injury." <u>Dempsey v. Pistol Pete's Beef N Beer, LLC</u>, No. 08-cv-5454, 2009 WL 3584597 at *4 (D.N.J. Oct. 26, 2009) (internal quotations omitted) (citing <u>Lujan</u>, 504 U.S. at 564, where affiant lacked standing to

seek injunction protecting endangered animals, because she merely professed intent to "some day" return to observe them, but had no "concrete plans" to do so).  However, if a plaintiff alleges an ongoing harm, her conditional statement – that, but for defendant's conduct, plaintiff would avail herself of certain benefits – satisfies the "injury in fact" requirement.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 184 (2000) (distinguishing affiants' conditional statements–that they would use nearby river for recreation if defendant were not discharging pollutants into it–from speculative "some day" intentions that were fatal to standing in Lujan).  Importantly, when the procedural posture before the court is one of summary judgment, as opposed to a motion to dismiss, the party asserting standing carries a more significant burden in setting forth such evidence.

These principles apply with equal force in the context of the ADA.  See Doe v. Nat'l Bd. of Med. Exam'rs ("Doe I"), 199 F.3d 146, 153 (3d Cir. 1999).  Although the Third Circuit has not addressed the issue, other Circuits have held that while plaintiffs "need not engage in a 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, see 42 U.S.C. § 12188(a)(1), they must at least prove knowledge of the barriers and that they would visit

11

the building in the imminent future but for those barriers."
Steger v. Franco, Inc., 228 F.3d 889, 892-93 (8th 2000) (citing
Laidlaw, 528 U.S. at 181-84); cf. Camarillo v. Carrols Corp., 518
F.3d 153, 158 (2d Cir. 2008) (finding "injury in fact" where
plaintiff had sufficiently shown (1) past injury under ADA, (2)
discriminatory treatment would continue, and (3) plaintiff
intended to return given past patronage and proximity of
restaurants to plaintiff's home).  "Intent to return to the place
of injury 'some day' is insufficient." Steger, 228 F.3d at 893
(citing Lujan, 504 U.S. at 564).

**A. Four-Factor Test for "Injury in Fact" in ADA Context**

Thus, an ADA plaintiff who seeks an injunction mandating
removal of architectural barriers cannot "manufacture standing"
by simply claiming that she intends to return to the defendant's
establishment.  See Kramer v. Midamco, 656 F. Supp. 2d 740, 747-
48 (N.D. Ohio 2009) (granting summary judgment where plaintiff
failed to show that she suffered an actual injury or had a
specific intent to return once violations were cured).  Instead,
courts assess a plaintiff's likelihood of returning in the
imminent future (but for the barriers) by considering the
following four factors: (1) the plaintiff's proximity to the
defendant's place of public accommodation; (2) the plaintiff's
past patronage; (3) the definiteness of the plaintiff's plan to

return; and (4) the plaintiff's frequency of nearby travel.  See,
e.g., Pistol Pete's, 2009 WL 3584597 at *4 (citing Cottrell v.
Zagami, LLC, No. 08-cv-3340, 2009 WL 1416044, at *3 n. 3 (D.N.J.
May 20, 2009) (collecting cases)).[9]  An analysis of these factors
allows the Court to appreciate the context of a plaintiff's
standing allegations.  It sheds light on the question of whether
the plaintiff is likely to return and thus whether the alleged
discrimination has caused a sufficiently real and immediate
injury to support standing for injunctive relief.  See id.

Here, Defendants only dispute the first prong of the Article
III standing analysis.[10]  They argue that Plaintiff Moore has
failed to show a "real and immediate" and "concrete and
particularized" threat of future injury sufficient to satisfy the

_____

[9] Jurisdictions outside New Jersey have adopted the same test to determine
standing in Title III cases.  See e.g., Brown v. Grand Island Mall Holdings,
Ltd., No. 09-cv-3086, 2010 WL 489531 at *3 (D. Neb. Feb. 8, 2010) (citing
Kramer v. Midamco, 656 F. Supp. 2d 740, 747-51 (N.D. Ohio 2009) (quoting
Wilson v. Kayo Oil, 535 F. Supp. 2d 1063, 1067 (S.D. Cal. 2007))); Bodley v.
Plaza Mgmt. Corp., 550 F. Supp. 2d 1085, 1088 (D. Ariz. 2008) (internal
citations omitted); Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.,
No. 05-cv-1307, 2005 WL 2989307 at *3 (N.D. Tex. Nov. 7, 2005); Molski v. Kahn
Winery, 405 F. Supp. 2d 1160, 1163 (C.D. Cal. 2005); D'Lil v. Stardust
Vacation Club, No. 00-cv-1496, 2001 WL 1825832 at *3 (E.D. Cal. Dec. 21,
2001).

[10] The Court notes that Defendants do not contest that Moore is a disabled
individual within the meaning of the ADA, who alleges he was denied access to,
and full enjoyment of the goods, services, facilities, privileges, advantages,
and/or accommodations of the Properties due to certain architectural barriers
that Defendants have not removed in accordance with the ADA.  Defendants do
not contest, at this juncture, that Moore has sufficiently established that he
suffered a past injury.  See Dempsey v. Harrah's Atlantic City Operating Co.,
No. 08-cv-5237, 2009 WL 250274 at *3 (D.N.J. Feb. 2, 2009).  Defendants also
do not dispute that they own and operate the Properties.  Thus, Moore
satisfies the requirement that the injury be fairly traceable to the
Defendants' challenged action and that prospective injunctive relief would
sufficiently redress the injury.  See id.

"injury in fact" requirement.  They cite to the four factors discussed above for support – the lengthy distance between Moore's residence and the Properties, his lack of past patronage, the infrequency of his nearby travel, and his "some day" plans to return.  The Court considers each factor in turn.

### 1. *Plaintiff's Proximity to the Properties*

Defendants argue that the distance between Plaintiff Moore's residence in New Providence, New Jersey, and the Properties in Atlantic City is approximately 125 miles.  (Def.'s Ex. C, Mapquest.com Screenshot.) They contend that since this distance exceeds 100 miles, this factor should weigh against a likelihood of future harm.  (Summ. J. Br. 7/6.)  Plaintiffs respond, correctly, that strict adherence to a distance test is inappropriate in a case such as this.  (Opp. Br. at 7.)

Courts in this District have held that a plaintiff's proximity to a defendant's establishment is not probative of intent to return when that establishment is a travel destination, such as a hotel.  Access 4 All, Inc. v. Absecon Hospitality Corp., No. 04-cv-6060, 2006 WL 3109966 at *6 (D.N.J. Oct. 30, 2006) ("When the place of public accommodation is a hotel, as opposed to a restaurant, Plaintiff's proximity is less probative of intent to return."); Access 4 All, Inc. v. 539 Absecon Blvd., LLC, No. 05-cv-5624, 2006 WL 1804578 at *3 (D.N.J. June 26, 2006)

(noting that courts have found the "proximity" prong inapplicable where defendant's establishment is a hotel) (citing <u>Wintergreen</u>, 2005 WL 2989307).  The rationale is that people generally stay in hotels when they are <u>not</u> in close proximity to their own homes. Thus, whether a hotel is located near a plaintiff's home has little bearing on that plaintiff's likelihood of return. Accordingly, the distance between Moore's residence and the Properties weighs neither for or against standing.

### 2. *Past Patronage*

The Court next turns to Moore's past patronage of the Properties and whether it supports a likelihood of return and future harm.  Where a plaintiff has visited a non-chain establishment only once, "the lack of a history of past patronage seems to negate the possibility of future injury at that particular location," unless the plaintiff can show some connection to the establishment or surrounding area that would suggest a likelihood of return.  <u>Kahn</u>, 405 F. Supp. 2d 1160, 1163, 1168 (C.D. Cal. 2005) (dismissing complaint <u>sua sponte</u> despite plaintiff's professed intent to return, where plaintiff visited defendant's winery only once and failed to show a connection to the winery, a preference for defendant's wines, or any ties to the Los Olivos area); <u>Bodley v. Plaza Mgmt. Corp.</u>, 550 F. Supp. 2d 1085, 1088 (D. Ariz. 2008) ("While a single visit

15

does not preclude a finding of standing, the lack of a history of past patronage seems to negate the possibility of future injury at that particular location.") (internal citations and quotations omitted); cf. Absecon Hospitality Corp., 2006 WL 3109966 at *7, Esposito Aff. ¶ 5 (Florida resident who "loved" gambling established likelihood of return on summary judgment, where he traveled to Atlantic City "on many occasions," including two trips in year prior to filing suit, stayed at defendant's hotel because it was near casino where he liked to gamble, had former girlfriend nearby, and a mother on Long Island, New York); 539 Absecon Blvd., 2006 WL 1804578 at *1, n.2, Spalluto Aff. ¶ 2 (Florida resident who visited defendant's hotel once but traveled to Atlantic City "several times a year," owned property and formerly conducted business there, enjoyed gambling and had friends there as well as family in Bricktown, New Jersey, had alleged sufficient facts to show standing at pleadings stage). Connections to the defendant's establishment may include a particular interest in the defendant's services or ties to the area through family and friends.  See id.

Here, Moore's past patronage consists of only one visit to the Properties, on March 20-21, 2009.  (Suppl. Compl. ¶ 6.) Importantly, he did so at the direction of Access 4 All's

president and for the specific purpose of determining any ADA violations, although he also alleges that he intended to "utilize the amenities of the facility as well." See, supra, Part I. Once he arrived at the Properties, he met with Access 4 All's expert, Gene Mattera, to search for ADA violations.  See id.

Prior to the March 2009 trip, Moore had not visited Atlantic City, where the Properties are located, for approximately six years, even though it is relatively close to his New Jersey residence.[11]  (Pl.'s Ex. 2, Moore Dep. I at 27:11-25.)  According to his deposition, the last time he had visited Atlantic City was in 2003.  (See id.)  Prior to 2003, his visits were few, less than once a year.  From 1998 through 2003, he visited the city only three or four times.  (Pl.'s Ex. 2, Moore Dep. I at 27:11-25.)  In fact, there is no evidence that prior to his fact-finding March 2009 trip, Moore had even visited Defendants' Properties at all.  As Moore testified, he does not recall whether he visited Bally's and he believes he "may have" visited Caesar's "quite a few years ago."  (Def.'s Ex. A, Moore Dep. I 22:2-15.)

Further, Moore has never alleged any connection to the Properties.  He has not asserted any family ties to Atlantic City

---

[11] Plaintiff asserts that Atlantic City is "the closest city to [his] residence and place of work, with casino gambling."  Moore. Aff. ¶ 3.

nor has he asserted a specific interest in staying or gambling at the Properties, as opposed to another casino or hotel.  Although Moore says that he has visited other New Jersey beach towns such as Belmar, Point Pleasant Beach, and Seaside Heights in the past, (see Moore Aff. ¶ 3),[12] these beach towns are neither located near the town of Atlantic City[13] nor do they have casinos.[14] Moore also admits that he is not an avid gambler. (Pl.'s Ex. 2, Moore Dep. I 33:21.)

In sum, although Plaintiff states that he enjoys the "atmosphere" of Atlantic City, (Pl.'s Ex. 3, Moore Dep. 49:7-9, Dec. 18, 2009, 2:30pm ("Moore Dep. II"); Moore Aff. ¶ 5), its restaurants, boardwalk, and beaches, (Moore Aff. ¶ 5.), his minimal past patronage and lack of a connection to the area do not appear to support a finding that he is likely to return and suffer future harm.

### 3. Definiteness of Plaintiff's Plans to Return

---

[12] Defendants contend that Plaintiff Moore's affidavit is a "sham" and should not be considered on this motion for summary judgment.  For the reasons expressed infra, the Court disagrees with this conclusion.  Accordingly, the Court considers Moore's affidavit for purposes of establishing standing at this juncture.

[13] The Court takes judicial notice of the fact, obtained from Google Maps (http://www.google.com/maps), that all three beach towns are located over one hour from Atlantic City.  See Hartford Life Ins. Co. v. Rosenfeld, No. 05-cv-5542, 2007 WL 2226014 at *8 n.5 (D.N.J. Aug. 1, 2007) (taking judicial notice, based on a Google Maps search, of the distance between two places).

[14] The Court takes judicial notice of the fact that Belmar, Point Pleasant Beach, and Seaside Heights do not offer casino gambling.  See N.J. Const. art. IV, § 7, ¶ 2, cl. D (restricting casino gambling to the city of Atlantic City).

The third factor requires the Court to consider the definiteness of Moore's plans to return to the Properties.  As discussed above, numerous courts have required plaintiffs to satisfy the demands of <u>Lyons</u>, <u>Lujan</u>, and <u>Laidlaw</u>, by presenting evidence that they suffer an ongoing harm because they are deterred from visiting the defendant's establishment or, put another way, because they would return to the establishment in the imminent future but for the barriers to access.  <u>See</u> <u>Steger</u>, 228 F.3d at 892 (requiring plaintiffs to show that "they would visit the building in the imminent future but for those barriers"); <u>Pickern</u>, 293 F.3d at 1137-38 (finding "concrete, particularized injury" where plaintiff stated he was "currently deterred from attempting to gain access" to defendant's store); <u>Disabled in Action v. Trump Intern. Hotel & Tower</u>, No. 01-cv-5518, 2003 WL 1751785 at *7 (S.D.N.Y. 2003) ("Courts considering ADA claims have found that disabled plaintiffs . . . have standing [at pleadings stage] to bring claims for injunctive relief if they show a plausible intention or desire to return to the place but for the barriers to access.") (collecting cases); <u>Clark v. McDonald's Corp.</u>, 213 F.R.D. 198, 229 (D.N.J. 2003) (requiring at least one member of plaintiff organization to present evidence that he or she is disabled, has notice of barriers, and would visit defendant's restaurant in the future

19

but for the barriers); cf. 539 Absecon Blvd., LLC, 2006 WL
1804578 at *4 ("[P]laintiff must have set forth a definitive
intent to return . . . in order to establish standing.").  Thus,
a plaintiff's mere assertion that he hopes to return at some
later date falls short of establishing a "real and immediate
threat" of future injury.  See Pistol Pete's, 2009 WL 3584597 at
*5 (likening a general allegation of a desire to return with the
"some day" intentions that the Supreme Court found unsatisfactory
in Lujan, 504 U.S. at 563); Harrah's, 2009 WL 250274 at *4
(same); Disabled Patriots, 2008 WL 4416459 at *6 (same).

      Moore alleged in his complaint that he "vacations in
Atlantic City, and intends to return to the subject property to
use its facilities offered to the public, and to verify the
Defendant's compliance with the ADA."  (Supp. Compl., ¶9.)  When
asked in his deposition, however, whether he had any future plans
to visit Atlantic City, he replied that he "plan[s] on returning"
to "do some gambling" and enjoy the "atmosphere."  (Moore Dep. II
49:7-9.)  When pressed as to whether he had any "definite plans"
to return, including "reservations anywhere," plans with a travel
agent or with friends, Moore responded, "I don't have any
definite plans, but I know I will return at some point."  (Id. at
49:10-15.)  Defendants argue that Moore's plans are nothing more

than "some day" intentions, which are fatal to standing under Lujan.  (Reply Br. 7/8.)

Plaintiff has now attempted to clarify his deposition testimony by way of an affidavit that provides in relevant part, "Ever since my stay at Bally's and Caesar's in March 20 and 21, 2009, respectively, it has been my definite intention to return for an overnight stay at both . . . hotels, the day the guest rooms . . . are made fully accessible for a person in a wheelchair . . . ."  (Moore Aff. ¶ 6.)  Defendants argue that this affidavit is a "sham" and must be disregarded because it conflicts with Moore's prior deposition testimony.  (Reply Br. 2/3.)  The Court turns to a discussion of the sham affidavit doctrine before addressing this third factor.

### a. Sham Affidavit Doctrine

Under the "sham affidavit" doctrine, "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (citing Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)).  However, the Third Circuit recently stressed that under the flexible approach adopted in this Circuit, district courts cannot disregard an affidavit merely because it conflicts to "some degree" with an

earlier deposition.  See EBC, Inc. v. Clark Bldg. Systems, Inc.,
618 F.3d 253, 269 (3d Cir. 2010); Baer, 392 F.3d at 624-45
(citing Kennett-Murray Corp. v. Bone, 622 F.2d 887, 894 (5th Cir.
1980), and Choudhry v. Jenkins, 559 F.2d 1085, 1090 (7th Cir.
1977) (summary judgment was improper even though party's
testimony was "not a paradigm of cogency or persuasiveness,"
inasmuch as it was not a "transparent sham")).  "In other words,
not all contradictory affidavits are necessarily shams, and when
there is independent evidence in the record to bolster an
otherwise questionable affidavit, courts generally have refused
to disregard the affidavit."  See EBC, Inc., 618 F.3d at 269
(internal quotations omitted) (citing Jiminez v. All Am.
Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007)).  In fact,
the Court should only disregard an affidavit if it finds that "no
reasonable jury could accord that affidavit evidentiary weight."
See id.  Since the Court is the finder of fact in this case, it
will consider instead whether there is a genuine issue of
material fact as to the affidavit's evidentiary weight.

Here, Moore's deposition testimony and affidavit, arguably,
are not squarely in conflict.  Moore was asked in his deposition
whether he had any definite plans to return to the Properties.
He responded, "I don't have any definite plans, but I know I will
return at some point."  (Moore Dep. II 49:14-15.)  In his

affidavit, he answered a slightly different question; whether he would return to the Properties <u>once the barriers were removed</u>.[15] In light of this distinction, the Court will consider Plaintiff's affidavit.

Moore states that he has "definite intentions" of returning to the Properties the day the architectural barriers are removed and the restrooms provide for roll-in showers.  (Moore Aff. ¶ 6.) Reiterating his earlier deposition testimony, where he expressed an interest in gambling and enjoying the atmosphere of Atlantic City, (Moore Dep. II 49:7-9), Moore also notes his interest in gambling and enjoying the beach, boardwalk, restaurants, and atmosphere of Atlantic City.  (Moore Aff. ¶ 5.)  Moore further alleges that he will return to check ADA compliance.

Although Moore's lack of past patronage to the Properties casts doubt on his alleged plans to return, the Court is mindful that all inferences and doubts must be resolved in favor of the non-moving party, here, the Plaintiffs.  Since Defendants have contested Plaintiff Moore's credibility in asserting his intent of return, however, the Court will conduct an evidentiary hearing to address this issue.[16]  <u>See</u>, <u>infra</u>, Part III.B.

---

[15] The Court notes that, assuming the plaintiff has satisfied the four factors relevant to standing discussed in this Opinion, it would be illogical to require a plaintiff to show definite plans to return to a place, which is not accessible to him, never mind that such a mandate would be inconsistent with Title III's prohibition against "futile gestures."  42 U.S.C. § 12188(a)(1).

[16] Courts must conduct evidentiary hearings to determine standing when there are disputed factual issues and witness credibility determinations to be resolved.  <u>See</u> <u>Bischoff v. Osceola County</u>, 222 F.3d 874, 879 (11th Cir. 2000)

Moore also asserts that his seven trips to Atlantic City
since filing his complaint are sufficient to satisfy this third
element.  (Pl.'s Opp. Br. 11.)  However, efforts made after
filing the complaint do not bolster the intent to return factor,
since standing is assessed at the time the complaint was filed.
See, e.g., 539 Absecon Blvd, 2006 WL 1804578 at *4 ("[P]laintiff
must have set forth a definitive intent to return before filing
his complaint in order to establish standing.") (emphasis added);
Wintergreen, 2005 WL 2989307 at *3 (hotel reservations made after
the filing of the complaint may not be used to assert an intent
to return); Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368,
1373 (M.D. Fla. 2004) (the fact that plaintiff made a reservation
at defendant's hotel after complaint was filed was immaterial
because standing is determined as of the date the suit is filed).
Nevertheless, these post-complaint trips may still be relevant to

---

("Our Circuit has suggested, and other circuits have made clear, that a
district court cannot decide disputed factual questions or make findings of
credibility essential to the question of standing on the paper record alone
but must hold an evidentiary hearing."); United States v. 1998 BMW "I"
Convertible Vin No. WBABJ8324WEM20855, 235 F. 3d 397, 400 (8th Cir. 2000)
(vacating dismissal and requiring district court to hold evidentiary hearing
on issue of standing where there were disputed factual issues and witness
credibility determinations to be resolved); Munoz-Mendoza v. Pierce, 711 F. 2d
421, 425 (1st Cir. 1983) ("The court must resolve any genuine disputed factual
issue concerning standing, either through a pretrial evidentiary proceeding or
at trial itself."); Martin v. Morgan Drive Away, Inc., 665 F.2d 598, 602 (5th
Cir. 1982).  This rule applies with equal force in the context of standing
disputes in ADA cases.  Hohlbein v. Hospitality Ventures LLC, 248 Fed. Appx.
804, 806, n.2 (9th Cir. 2007) (reversing dismissal of ADA case on standing
grounds and noting that court could revisit issue in evidentiary hearing where
defendants argued that plaintiff's litigation history, cancellation of hotel
reservations, and long distance from defendant's hotel undercut plaintiff's
claimed threat of future harm, particularly since plaintiff carries
evidentiary burden of demonstrating standing).

24

the Court's assessment of Plaintiff's credibility regarding the factors set forth herein.

### 4. *Frequency of Nearby Travel*

Courts typically consider the frequency of a plaintiff's travel near the disputed establishment to determine the likelihood of future injury.  The rationale behind this prong is that if a plaintiff resides or works a great distance from a non-compliant establishment, he or she is less likely to have routine interaction with the establishment and is thus less likely to return.  Defendants argue that because Moore "works approximately 125 miles from Atlantic City and does not seek any routine medical treatment in the area, it does not appear likely that he generally travels in the vicinity."  (Summ. J. Br. 9/7-8.) Plaintiffs respond with a policy argument, complaining that the test for injunctive relief is unfair because it allows discrimination against disabled individuals "anywhere they travel on a one-time basis."  (Opp. Br. 18.)  Plaintiffs' argument fails to persuade the Court, because it ignores the well-settled principles under <u>Lyons</u>, <u>Lujan</u>, and <u>Laidlaw</u> requiring a sufficiently "real and immediate" threat of future injury to support injunctive relief.  <u>See</u> <u>supra</u>.

As an initial matter, the Court notes that this final factor apparently contemplates a local establishment that caters to a

local clientele and provides less assistance in the context of a travel destination.  For example, the fact that a plaintiff rarely travels near a particular Shell gas station is probative of the fact that the plaintiff is unlikely to return to that particular gas station.  In contrast, the fact that a plaintiff does not frequently travel <u>near</u> a casino has little probative value of that plaintiff's likelihood of returning to the casino.

So that the inquiry has greater application to Moore, then, the Court construes this factor to consider his travel to Atlantic City.  Moore's only pre-litigation visit to Atlantic City since 2003 was for the purposes of finding or confirming ADA violations, with what appears to be only incidental gambling and entertainment.  This infrequent travel to Atlantic City suggests that plaintiff is unlikely to return and suffer future injury. Nevertheless, the Court will inquire into the nature and frequency of Plaintiff's visits to Atlantic City at the forthcoming evidentiary hearing.

**B.   Evidentiary Hearing to Determine Plaintiff's Standing**

Having considered the totality of the preceding four factors, Plaintiff Moore's standing is questionable.  If a single visit to an establishment for the purposes of litigation, coupled with an assertion that the plaintiff intends to return, can, <u>ipso facto</u>, create standing for injunctive relief, then any disabled

plaintiff could manufacture such standing, even those with no connection to the relevant area or any history of past patronage.[17]  This result would render meaningless the four-prong test, which assesses likelihood of return based on past patronage, definitiveness of intent to return, and frequency of nearby travel.[18]  While the ADA uses broad language in conferring standing,[19] the Court is mindful that a plaintiff seeking injunctive relief must also show a sufficiently real and immediate threat of future injury or ongoing harm to support a claim for prospective injunctive relief.  See, supra, 9-11.

Nevertheless, given summary judgment posture, the Court must resolve all reasonable doubts and issues of credibility against the Defendants.  See Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).  Since the Court is presented with disputed facts bearing directly on Plaintiff's intention of

---

[17] The Court notes, however, that it may not make a credibility assessment at this time, but must take as true Moore's allegations that he visited the Properties not only to "test" ADA compliance but also to gamble.
[18] The Court omits the "proximity" factor, since this does not apply to hotels or other travel destinations.  See supra Part III.A.1.
[19] Title III of the ADA provides that injunctive relief is available "to any person who is being subjected to discrimination on the basis of disability in violation of [Title III]."  42 U.S.C. § 12188(a)(1)(emphasis added).  For a discussion of Congress' intent in conferring broad standing under the similarly-worded Title II of the ADA, which prohibits disability discrimination by a public entity, see Tandy v. City of Wichita, 380 F.2d 1277, 1286-87 (10th Cir. 2004) (concluding that "Congress intended Title II to confer standing to the full limits of Article III").

returning to the Properties, however, the Court must resolve
these factual disputes and make witness credibility
determinations central to the standing issue.  See, supra, n.16.
Accordingly, the Court will conduct an evidentiary hearing to
resolve the disputed facts and credibility issues set forth
above.  See id.; cf. Lujan, 504 U.S. at 561 (party claiming
federal jurisdiction bears burden of establishing standing "in
the same way as any other matter on which the plaintiff bears the
burden of proof, i.e., with the matter and degree of evidence
required at successive stages of the litigation").

## C.   Civil Rights Tester Status

In addition to the preceding four factors, Defendants also
ask this Court to find that Plaintiff Moore lacks standing due to
the "parasitic nature" of his ADA claims in the instant
litigation.[20]  (Summ. J. Br. 8-9/9-10.)  Although Defendants do

---

[20] Defendants cite two district court cases from other jurisdictions for
support: Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368 (M.D. Fla. 2004)
and Molski v. Mandarin Touch Restaurant, 347 F. Supp. 2d 860 (C.D. Cal. 2004),
aff'd in relevant part, 500 F.3d 1047 (9th Cir. 2007), cert. denied, 129 S.
Ct. 594 (2008).  However, neither case supports the proposition that Plaintiff
Moore should be denied standing because he is engaged in allegedly
unscrupulous shotgun litigation that undermines the spirit and purpose of the
ADA.  (Id.)  In Brother, the Court lamented the ADA's statutory framework that
"encourages massive litigation" rather than "conciliation and voluntary
compliance," but concluded that "[o]nly Congress can respond to [these]
vexatious litigation tactics that otherwise comply with its statutory
frameworks."  331 F. Supp. 2d at 1375.  In Molski, the Court held that a pre-
filing order was warranted by a plaintiff who had filed hundreds of nearly
identical Title III claims against various establishments as part of an
apparent scheme of systematic extortion.  347 F. Supp. 2d at 867-68.  However,
the Molski Court distinguished between plaintiffs who properly seek injunctive
relief under Title III and litigants, like Molski, who file ADA claims as a
"pretext to gain access to the federal courts," while pursuing claims for
damages under state law.  Id.  Here, unlike Molski, Plaintiff Moore does not

not articulate how this affects the standing analysis, Defendants do contend that Moore visited the Properties merely to further this litigation and extract attorney's fees.[21]  Thus, it appears Defendants may be challenging Moore's standing on the grounds that he was not a bona fide patron at the Properties, but merely a "tester" of ADA compliance with no genuine intent to return. During the evidentiary hearing, this issue may be developed. Although motive is typically not a factor considered in the standing analysis, at least at the summary judgment stage, <u>see Absecon Hospitality</u>, 2006 WL 3109966 at *7, it may become relevant insofar as it bears on Plaintiff Moore's credibility in professing an intent to return to the Properties and as it relates to whether Moore has alleged a redressable injury.  <u>See, e.g.</u>, <u>Harris v. Stonecrest Care Auto Ctr.</u>, 472 F. Supp. 2d 1208, 1217-1220 (S.D. Cal. 2007) (granting defendants' motion for judgment as a matter of law where plaintiff's sole purpose in visiting Shell station was to file suit and any injunctive relief would not redress plaintiff's injury since plaintiff had no credible plans to return to defendant's gas station); <u>Absecon</u>

---

seek state damages claims.

[21] Defendants cite to the twenty ADA cases Moore has been substituted in as plaintiff and allege that even in these matters where he is a named party, Moore cannot "recall any details" about the access barriers he has allegedly encountered.  <u>See id.</u>  Defendants also suggest that such litigation merely serves as a vehicle to secure attorney's fees and costs.

Hospitality, 2006 WL 3109966 at *7 (noting, in dicta, that a frequent litigant's stated goal of ensuring ADA compliance, where he had other contacts with the establishment and surrounding area, made his claim of intent to return to defendant's hotel more, not less, credible).

## D. Prudential Standing Requirements

Although Defendants do not raise any prudential limitations regarding Plaintiffs' standing, the Court has an independent obligation to examine its own jurisdiction and address such issues sua sponte at any stage of the proceedings.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31 (1990)).  Prudential standing principles prohibit a litigant from raising a third party's legal rights.  Allen v. Wright, 468 U.S. at 751.  Thus, Plaintiff Moore may only seek redress for injuries he has actually suffered or barriers under the ADA that have actually harmed him.  See Steger, 228 F.3d at 893-94 (holding that a blind plaintiff lacked standing to seek relief for ADA violations unrelated to his disability); Absecon Hospitality Corp., 2006 WL 3109966 at *8; Clark v. McDonald's, 213 F.R.D. at 215 n.13.[22]

---

[22] See also Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1044 n. 7 (9th Cir. 2008) ("Doran does not have standing to challenge those barriers that would burden or restrict access for a person who is blind. Doran may challenge only those barriers that might reasonably affect a wheelchair user's full enjoyment of the store") (citations omitted); Access for the Disabled, Inc. v. Osceola Enterprises of Kissimmee, Inc., No. 09-1805, 2010 WL 2889823, at *1 (M.D. Fla. July 22, 2010); Disabled in Action of Metro. N.Y, 2003 WL 1751785 at *29 (noting that ADA plaintiffs only have standing to challenge those violations affecting their particular disability).

Here, Plaintiffs assert that the Properties lack "sufficient notification devices for individuals with hearing impairments," and other violations that do not reasonably impact mobility-impaired individuals.  (Suppl. Compl. ¶ 12.)  Since Plaintiffs do not allege that Moore is disabled beyond his mobility impairment, he may not assert these claims.

Accordingly, to the extent that Plaintiffs seek redress for any ADA violations that are unrelated to Moore's disability, they lack standing, and those claims are **dismissed with prejudice.**

### IV. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are **denied without prejudice.**  The Court will conduct an evidentiary hearing on **February 24, 2011, at 10:00am**, and at the conclusion of the hearing, the Court will revisit the issues raised herein.  Plaintiffs' claims, insofar as they allege injuries under the ADA, which do not affect mobility-impaired individuals such as Plaintiff Moore, are **dismissed with prejudice.**  An appropriate Order shall follow.


Dated: November 23, 2010

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

31